1  Gerald V. Hollingsworth, Jr, SBN 145081
   Law Office of Gary Hollingsworth
2  2920 Huntington Drive, Suite 218
   San Marino, California 91108
3  Telephone: (626) 292-2626
   Facsimile: (626) 292-2638
4  Email: gvhollingsworth@sbcglobal.net

5  Attorneys for **Plaintiffs/Judgment Creditors**,
   **Shaoxing City Maolong Wuzhong Down Products Co., Ltd.,**
6  **and Shui Yan Cheng**

7  L. Scott Keehn, SBN 61691
   Leslie F. Keehn, SBN 199153
8  **KEEHN & ASSOCIATES**
   A Professional Corporation
9  402 W. Broadway, Suite 1210
   San Diego, California 92101
10 Telephone: (619) 400-2200
   Facsimile: (619) 400-2201
11 Email: scottk@keehnlaw.com; lesliek@keehnlaw.com

12 Special Bankruptcy Counsel for **Plaintiffs/Judgment Creditors,**
   **Shaoxing City Maolong Wuzhong Down Products Co., Ltd.,**
13 **and Shui Yan Cheng**

14

15                **UNITED STATES BANKRUPTCY COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17                     **LOS ANGELES DIVISION**

18 In Re:                          )  Case No.: 2:09-bk-24637-RN
                                    )
19 **WEI XU AND LE DU,**            )  Chapter 11
                                    )
20            Debtors.              )  Adversary No.: _____
                                    )
21 _____ )
                                    )
22 **SHAOXING CITY MAOLONG**        )  **COMPLAINT TO DETERMINE**
   **WUZHONG DOWN PRODUCTS CO. LTD.** ) **DISCHARGEABILITY OF DEBT**
23 **and SHUI YAN CHENG,**          )  **PURSUANT TO 11 U.S.C. § 523(a)(4) AND**
                                    )  **11 U.S.C. § 523(a)(6)**
24            Plaintiffs            )
                                    )
25      v.                          )
                                    )
26 **WEI XU and LE DU,**            )
                                    )
27            Defendants            )
   _____ )
28

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

Plaintiffs/Judgment Creditors Shaoxing City Maolong Wuzhong Down Products Co., Ltd. and Shui Yan Cheng (collectively, "Plaintiffs"), for their Adversary Complaint against Debtors/Defendants Wei Xu and Le Du, allege and state as follows:

## JURISDICTION AND VENUE

1.      This is an adversary proceeding in bankruptcy to determine the dischargeability of debts owed by Debtors Wei Xu ("Xu") and Le Du ("Du").  This Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) & (b), 1334(a) & (b).

2.      Venue is proper in the Central District of California in accordance with 28 U.S.C. § 1409(a) because this case arises in, arises under, and is related to the above-referenced bankruptcy case.

3.      This matter constitutes a core proceeding to be heard and determined by the Bankruptcy Court in accordance with 28 U.S.C. § 157(b)(2)(I).

## PARTIES

4.      Plaintiff Shaoxing City Maolong Wuzhong Down Products Co., Ltd. ("Maolong") is a Chinese company specializing in the manufacture of feather, down, and related products for the bedding industry.  Maolong is a Judgment Creditor of Dong in the amount of $1,660,692, plus interest at a rate of 10% per annum from February 24, 2009.

5.      Plaintiff Shui Yan Cheng ("Cheng") is a Chinese citizen with a California business address located at 17798 Rowland Street, City of Industry, California 91748.  Cheng is a Judgment Creditor of Dong in the amount of $3,688,921, plus interest at a rate of 10% per annum from February 24, 2009.

6.      Upon information and belief, Xu is a naturalized United States citizen with a California residential address located at 18816 Whitney Place, Rowland Heights, California 91748.

7.      Upon information and belief, Du is a naturalized United States citizen with a California residential address located at 18816 Whitney Place, Rowland Heights, California 91748.

8.      Upon information and belief, Xu and Du were and are agents of one another.  For

118214/MJW/5529.01

all acts described herein and at all times relevant herein, Xu was acting within the scope of this agency relationship.

**COMMON FACTS**

9.     Upon information and belief, Wei Dong ("Dong") is a naturalized United States citizen with a California residential address located at 18933 Westleigh Place, Rowland Heights, California 91748.   At all times relevant herein, Dong was and is an agent for Xu and Du, and for all acts described herein acted within the scope of that agency.

10.     Pursuant a June 2000 agreement, Cheng, Dong, and Xu formed Aeolus Down, Inc. ("Aeolus").  Aeolus was formed to engage in business in the consumer textiles/bedding industry.

11.     Cheng was a 34% owner of Aeolus and was responsible for using his connections and stature in the bedding industry to enhance the company, locate a manufacturer of products, and infuse the company with capital and loans.

12.     Dong and Xu were each 33% owners of Aeolus and were responsible for running the day-to-day operations of the company.

13.     Cheng was successful in locating Maolong to serve as the primary manufacturer to Aeolus.

14.     While Aeolus struggled during its first two years of operation, the company began flourishing in 2003.

15.     Beginning at or around this time, Dong and Xu started causing Aeolus to compensate them at excessive levels.  From 2003 to 2007, Aeolus paid out more $4,041,300 in salary to Dong and Xu, and to Dong's wife, who was not employed by the company.  Cheng was not paid any salary.

16.     Also during this time period, Dong and Xu caused Aeolus to make improper distributions to them, without any distribution made to Cheng.  These improper distributions themselves totaled $8,640,000.

17.     Meanwhile, Dong and Xu had failed to cause Aeolus to pay invoices issued by Maolong for products Maolong manufactured for and shipped to the company.

18.     Subsequently, in 2008, Maolong and Cheng instituted litigation against Aeolus,

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

later adding Xu and Dong individually as defendants, to remedy these misdeeds.

19.     The parties agreed to submit the dispute, which included counterclaims from Xu, Dong, and Aeolus, to binding arbitration.

20.     On December 22, 2008, the Arbitrator issued his Final Ruling. A true and accurate copy of this Final Ruling is attached to and incorporated in the Judgment, which is attached hereto as Exhibit A. No appeal was taken.

21.     In the Ruling, the Arbitrator found that Xu and Dong treated Aeolus as their alter ego:

> [Xu] and [Dong] dominated and controlled [Aeolus], treated the assets of [Debtor] as their own as indicated by the payment of salary to the spouse of [Dong]. She was not employed by [Aeolus]. [Aeolus] did not keep and respect the corporate formalities that a corporation is required to maintain. [Xu] and [Dong] did not issue any stocks to [Cheng] and did not document for their and his records that he was not entitled to any shares of [Aeolus]. . . The failure to either issue the shares to [Cheng] or notify [Cheng] that he was not entitled to any shares while issuing shares to themselves, constitutes complete domination and control of the corporation. Such conduct leads to the conclusion that the identities merged.

22.     The Arbitrator also noted that Xu, Dong, and Aeolus acknowledged that invoices totaling $1,332,801.28 (not including interest) had not been paid to Maolong.

23.     The Arbitrator found that the salaries Xu and Dong caused Aeolus to pay were excessive by $2,209,770, and that the distributions Xu and Dong caused Aeolus to make were improper in that Cheng was cut out entirely as a 34% owner.

24.     The Arbitrator found that Xu, Dong, and Aeolus, jointly and severally, were liable to Maolong in the amount of $1,660,692 (which included interest), and Xu, Dong, and Aeolus, jointly and severally, were liable to Cheng in the amount of $3,688,921.

25.     The Arbitrator's Ruling was confirmed by the trial court and memorialized in a Judgment dated March 27, 2009. Specifically, Judgment was issued in Maolong's favor, and against Xu, Dong, and Aeolus jointly and severally, in the amount of $1,660,692, plus interest to be calculated at a rate of 10% per annum from February 24, 2009. Judgment was also issued in Cheng's favor, and against Xu, Dong, and Aeolus jointly and severally, in the amount of $3,688,921, plus interest to be calculated at a rate of 10% per annum from February 24, 2009. A

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

118214/MJW/5529.01

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

1    true and accurate copy of the Judgment is attached hereto as Exhibit A.  No appeal has been taken

2    from the Judgment.

3        26.    The Judgment only addresses Dong and Xu's misconduct from January 1, 2003

4    through December 1, 2007.

5        27.    On information and belief, Dong and Xu engaged in the same or similar acts of

6    misconduct by causing Aeolus to pay them excessive salaries, and excessive and otherwise

7    unlawful distributions during the period commencing on January 1, 2008 through and including

8    June 8, 2009 (the "Post-Judgement Period").  The precise amount of these wrongful distributions

9    (the "Post-Judgment Diversions") is not presently known to Plaintiff's, but is believed to be not

10   less than 3,000,000.00.

11       28.    The diversions caused by Dong and Xu which formed the basis for the Judgment

12   and the Post-Judgment Diversions were made maliciously and with the actual intent to damage, if

13   not destroy, the value of Cheng's ownership interest in Aeolus.

14       29.     The diversions caused by Dong and Xu which formed the basis for the Judgment

15   and the Post-Judgment Diversions were made maliciously and with the actual intent to damage

16   and eliminate the value of Cheng's rights to participate in the management and control of Aeolus.

17       30.    The diversions caused by Dong and Xu which formed the basis for the Judgment

18   and the Post-Judgment Diversions were made maliciously and with the actual intent to damage if

19   not destroy the value of Maolong's accounts receivable due from Aeolus.

## FIRST CLAIM FOR RELIEF

### [Determination of Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)]

22       31.    Plaintiffs reallege and incorporate herein by reference all the allegations contained

23   in paragraphs 1 through 30 as though fully set forth herein.

24       32.    Maolong has filed a Proof of Claim in this case in the amount of the Judgment that

25   was entered in its favor, and against, *inter alia*, Xu.

26       33.    By his actions, as stated above, and which formed the basis of the Judgment and

27   caused it to be entered, Xu engaged in fraud and/or defalcation in a fiduciary capacity, and/or

28   embezzlement, and/or larceny.

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

34. The Judgment in Maolong's favor, and against Xu, therefore, is excepted from discharge by 11 U.S.C. § 523(a)(4).

## SECOND CLAIM FOR RELIEF

**[Determination of Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)]**

35. Plaintiffs reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 35 as though fully set forth herein.

36. Cheng has filed a Proof of Claim in this case in the amount of the Judgment that was entered in his favor, and against, *inter alia*, Xu.

37. By his actions, which formed the basis of the Judgment and caused it to be entered, Xu engaged in fraud and/or defalcation in a fiduciary capacity, and/or embezzlement, and/or larceny.

38. The Judgment in Cheng's favor, and against Xu, therefore, is excepted from discharge by 11 U.S.C. § 523(a)(4).

39. All of the Post-Judgment Diversions are excepted from discharge by 11 U.S.C. § 523(a)(4).

## THIRD CLAIM FOR RELIEF

**[Determination of Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)]**

40. Plaintiffs reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 39 as though fully set forth herein.

41. By his actions, which formed the basis of the Judgment in favor of Maolong and against Xu, and caused it to be entered, Xu acted willfully and maliciously to the detriment and injury of Maolong.

42. The Judgment in Maolong's favor, and against Xu, therefore, is excepted from discharge by 11 U.S.C. § 523(a)(6).

## FOURTH CLAIM FOR RELIEF

**[Determination of Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)]**

43. Plaintiffs reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 36 as though fully set forth herein.

44. By his actions, which formed the basis of the Judgment in favor of Cheng and against Xu, and caused it to be entered, Xu acted willfully and maliciously to the detriment and injury of Cheng.

45. The Judgment in Cheng's favor, and against Xu, therefore, is excepted from discharge by 11 U.S.C. § 523(a)(6).

46. All of the Post-Judgment Diversions are excepted from discharge by 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. That the Court enter Judgment in favor of Maolong and Cheng and hold, adjudge, and decree:

    1.1 That the Judgment entered in Maolong's favor, and against Xu and Du, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) as to both Xu and Du;

    1.2. That the Judgment entered in Cheng's favor, and against Xu and Du, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) as to both Xu and Du;

    1.3 For a Judgment in favor of Cheng and against Xu and Du determining the amount of the Post-Judgment Diversions and awarding 34% of that amount as a money Judgment to Cheng and determining that the money Judgment to be excepted from discharged pursuant to 11 U.S.C. § 523(a)(4).

    1.4 That the Judgment entered in Maolong's favor, and against Xu and Du, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6);

    1.5 That the Judgment entered in Cheng's favor, and against Xu and Du, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) as to both Xu and Du; and

/ / /

/ / /

/ / /

118214/MJW/5529.01

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

KEEHN & ASSOCIATES, APC
ATTORNEYS AT LAW
402 WEST BROADWAY, SUITE 1210
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 400-2200 · TELECOPIER (619) 400-2201

1.6    For a Judgment in favor of Cheng and against Xu and Du determining the amount of the Post-Judgment Diversions and awarding 34% of that amount as a money Judgment to Cheng and determining that the money Judgment to be excepted from discharged pursuant to 11 U.S.C. § 523(a)(6).

2.    For costs of suit and attorney's fees according to proof; and

3.    Such other and further relief as the Court deems reasonable, just and proper.

Dated: September 18, 2009    **KEEHN & ASSOCIATES**
A Professional Corporation


By: //s// L. Scott Keehn
L. Scott Keehn
Attorneys for Judgment Creditors
**Shaoxing City Maolong Wuzhong Down
Products Co., Ltd., and Shui Yan Cheng**

-8-

# EXHIBIT A

Bin Li, Esq. SBN 223126
LAW OFFICES OF BIN LI
17800 Castleton Street, Suite 605
City of Industry, CA 91748
telephone: 626-839-0277
fax: 626-839-0322

Attorneys for Petitioner Shaoxing City Maolong Wuzhong
Down Products Co., Ltd.

Mark D. Hartzler, SBN 174783
266 Camino Castenada
Camarillo, California 93010
Telephone No. (213) 804-2877
Facsimile No. (213) 947-1086

Attorney for Petitioner Shui Yan Cheng

FILED

MAR 17 2009

BY _____ DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

| | |
|---|---|
| SHAOXING CITY MAOLONG., etc., | ) Case No. RCVRS068518 |
| Plaintiff, | ) |
| v. | ) [PROPOSED] |
| | ) JUDGMENT |
| AEOLUS DOWN, INC., etc. et al, | ) |
| Defendants. | ) |
| | ) |
| AND RELATED CROSS-ACTION. | ) |

The arbitration award of Albert C. Lum having been confirmed
by order of this court on February 24, 2009, and no statement of
decision having been requested by either party;

1

JUDGMENT

IT IS ORDERED ADJUDGED AND DECREED that Petitioners Shaoxing City Maolong Wuzhong Down Products Co., Ltd., and Shui Yan Cheng shall recover from respondents Aeolus Down, Inc., Wei Dong, and Wei Xu, as follows:

(1) Shui Yan Cheng is a shareholder of Aeolus Down, Inc. owing 34% of the corporation.

(2) Petitioner Shui Yan Cheng shall recover from respondents Aeolus Down, Inc., Wei Xu, and Wei Dong, jointly and severally, the sum of $3,680,921.00, together with interest at the rate of 10% per year from February 24, 2009.

(3) Petitioner Shaoxing City Maolong Wuzhong Down Products Co., Ltd. shall recover from Aeolus Down, Inc., Wei Xu, and Wei Dong, jointly and severally, the sum of $1,660,692.00, together with interest at the rate of 10% per year from February 24, 2009.

(4) The remaining part of the judgment shall incorporate the arbitrator's Final Rule, attached and incorporated hereto as Exhibit "A".

Dated: MAR 2 7 2009

The Hon. Judge David Williams,
Judge of the Superior Court
DAVID A. WILLIAMS

2

JUDGMENT

1  ALBERT C. LUM (CA Bar no. 33521)
2  LAW OFFICE OF ALBERT C. LUM
   1005 East Colorado, Suite 207
3  Pasadena, CA 91106
   Telephone: (626) 795-8886
4  Facsimile: (626) 795-8836

5  Arbitrator

6

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SAN BERNADINO

10

11  SHAOXING CITY MAOLONG WUZHONG    )   Case No. RCV 088518
    DOWN PRODUCTS CO. LTD, a corporation )
12  organized under the law of China,    )   Related case no. RCV 089 889
                                         )
13              Plaintiff,               )
                                         )
14      vs.                              )   FINAL RULING
                                         )
15                                       )
    AEOLUS DOWN, INC., a California      )
16  corporation; WEI DONG aka JOHN DONG, an )
    individual; WEI XU, an individual, and DOES )
17  1 through 100, inclusive,            )
                                         )
18              Defendants               )
                                         )
19  ———————————————————————              )
                                         )
20  AND RELATED ACTIONS AND CROSS-       )
    ACTIONS.                             )
21                                       )
                                         )
22                                       )

23

24      TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS:

25      The parties are:

26      Shaoxing City Maolong Wuzhong Down Products Co., LTD (Maolong), Aeolus Down, Inc.

27

28  (AD) a California corporation, Wei Dong, aka John Dong, an individual (Dong), (WD), Wei Xu,

(WX), an individual, and Shui Yang Cheng (SC).

This matter involves a complicated business deal between the above parties, including sale of goods, a start up business, an agreement between SC, WX, WD and AD, the U.S. operating company.

The facts regarding the origination of the business dealing have been stated numerous times, and the parties are familiar with those facts leading to the start up of the company, its development, and subsequent highly successful business in the U.S.

The important issues that arise from the business dealings from beginning to end can be categorized. They are set forth below with a discussion of what the arbitrator considers the most relevant facts, and the supporting evidence either in documentation or oral testimony at prior depositions and the recent arbitration hearing.

Counsel for all parties have been diligent in providing information to the arbitrator. A professional work product has been rendered by each counsel to their credit, and to the benefit of their clients. The delay in the arbitrator's issuance of the arbitration award was a combination of several personal and business factors which are unrelated to any conduct of counsels or their parties.

One: June 2000 agreement between SC, WX, and WD.

Plaintiff's exhibit 8 was a writing of the terms and conditions under which the venture known as AD was to be launched. The agreement was prepared by WX after the meetings between SC, WX, and WD. Because the agreement was initially drafted in Chinese, it is presumed that SC understood the terms and conditions of said agreement. Because WX and WD were partially educated in the U.S., London, and earlier in China, they had full comprehension of the terms and conditions of the agreement.

///

The basic terms: SC was to provide expertise that he had acquired in the "goose down" business for many years, provide a manufacturer of the products to be exported from China to the U.S. to AD, provide capital and loans to AD as necessary. "Necessary" meant until AD became self-sustaining and profitable. As a practical matter, because SC was a major figure in the major supplier, i.e., Maolong, the terms of payment would be favorable to AD. In fact, it appears that favorable credit terms were extended by Maolong to AD.

SC initially provided $5000 for start up expenses, and was to provide cash contributions at the rate of $50,000 per year when AD was unprofitable. That figure would be a benchmark but it was discontinued after the first year. In addition, SC claimed the initial shipping of inventory to AD was a part of the capital that he invested. SC also claimed a loan was made to AD, but the elements of the loan and its pay back indicated that the "loan" of $50,000 involved China tax convenience for SC. The purpose of the "loan" of $50,000 was never made clear, but it is clear that it was not an operating capital loan.

WX and WD's obligation under the agreement were to run the day-to-day operations. Prior to this agreement, WD had worked with goose down products for four years. WX had not previously been involved in the sale or manufacture of goose down products. WD had been an importer and was familiar with chain store companies in the U.S. WD was to establish sales of the goose down products to be manufactured by Maolong and exported to AD for AD's sale and distribution. Salaries were taken by WX and WD beginning January 2001. Profitability occurred in the fourth quarter of 2002.

In the first two years, i.e., 2000 and 2001 there was not great activity and certainly no profits by AD. With extensive expenses and growing operating expenses, it became imperative that operating capital be inserted into AD's operations. This was done in 2001 by WX and WD. They drew funds from their respective credit cards and investment accounts. These advances were repaid to WX and WD by AD.

-3-

In an important meeting in September 2000, SC, WX and WD met and discussed the need for additional capital. At the meeting, WX and WD stated they informed SC that a) funds were needed pursuant to the agreement, b) if SC did not comply with the performance of the agreement and provide the necessary capital funds, he would no longer have an interest in AD. WX and WD also stated SC was informed that his interest in AD would be lost without further cash infusion from him. SC denies that. Therein lies the first question to be asked in this matter. The two versions are inconsistent. In similar situations, this issue would never have arisen if proper written documentation had been made. SC said in substance "I did not receive notice that I would lose my interest in AD". WX and WD are persons with higher education than most persons, have dealt with the Western society and economy for a substantial number of years before the 2000 meeting and prepared the aforesaid agreement between the parties. Having greater familiarity with U.S. business, it almost becomes incumbent upon them in dealing with SC or similar persons, that a written document confirming a most serious act, i.e., stripping SC of his interest, should have been prepared. It wasn't.

SC and WX / WD are each claiming that the other party breached the agreement. SC wishes to have his share of the profits and the company. WX / WD contend that SC has no interest in the company based on his failure to provide the necessary funding. As stated before, written documentation of either side's position could have been a clear and defining treatise of the parties' respective interests. Instead, as happens in many cases, the relationship between the parties was such that they were unwilling or unable to prepare the written documentation. Instead, they now rely upon extraneous factors which this arbitrator is having to evaluate to determine the respective interest of the parties.

To analyze each parties' positions based on the evidence submitted is difficult. First, as to SC's position, there is no question as to what he brought to the table in the formation of AD. The question is whether or not SC has substantially performed his obligations under the agreement. The

other question that could be asked hypothetically, is if he had been informed that his failure to provide the final financing in 2000 would require his ouster from the business as a participant in the profits and as a 34% owner of the company, did he acquiesce?

In my opinion, and as stated in the tentative ruling, there has been substantial compliance by SC of his obligations. One could assume because the company was not in a money-making situation in 2000 – 2001, SC's position was to not put good money after bad. In other words, to let it die or survive without further investment. WX / WD stepped up to the plate and reached into their savings and credit to keep the daily operations going. WX / WD were already drawing salaries although AD was not yet profitable. At the same time, SC did not totally remove himself from participation in AD. Business was still being conducted between Maolong and AD. That fact supports SC's position that he was not informed of his loss of his 34% interest in AD and therefore the issue of acquiescence is never confronted.

The defendants offered oral testimony that they did inform SC that he no longer had an interest in the company for his failure to provide the funding. Based upon the various backgrounds of the defendants, it is not a convincing argument that they did inform him. The agreement was a carefully drafted document. That confirms that the defendants were well versed in the manner of doing business, which requires written documentation of major happenings in a business relationship. Because there was no written documentation the conclusion that the arbitrator reaches is that SC was aware that funds were needed, but was reluctant to "put good money after bad". At the same time, the defendants, by their reluctance in giving a formal notice to comply with the legalities of the situation, did not want to cut the strings with the supplier, Maolong, or to create a legal controversy which would be costly and could have ended up negatively to their position. The easiest choice, based on the financial commitment by the defendants, was to keep AD operating with the hope that the future was greater than the risk they were undertaking. Fortunately, their risk-

-5-

taking proved correct. The company flourished for the next several years. How this comes out in dollars and cents will be dealt with at the conclusion of this award. There are two issues, SC's share of the profits based on his partial ownership of the company, and a determination of what, if any, share of the company he owns. Parenthetically, I will not deal with the value of the company as a part of the award. That becomes, in the arbitrator's opinion, a negotiating point between SC and the defendants upon conclusion of this arbitration and its award.

Plaintiffs claim Maolong's and SC's formation and operation of Newport in 2005 was a breach of fiduciary duty owed by SC to AD. At the same time, corporate documents did not, after the initial formation of AD, list SC as director or officer of AD. At worst, SC was a constructive shareholder of SC, and SC had no fiduciary obligation to AD. The arbitrator finds Newport's operations were not a breach of any fiduciary obligations of SC.

Two : Maolong's claim against AD and the underlying issue of alter ego:

The first point is that Plaintiff, Maolong, while making the allegation of alter ego, did not attempt in the arbitration hearing to specify to the arbitrator when the alter ego elements were being offered. At the same time, if the shoe fits, it wears.

The tentative ruling indicated an amount owing of $860,280.32 as of December 31, 2004. Maolong has asserted, and the defendants have admitted instead a liability of $1,332,801.28 as total unpaid invoices less the alleged charge backs. There is also the claim for samples and the power generator of $80,000 which AD acquired for Maolong. It later proved defective. Taking the latter first, the arbitrator believes that the defendants acted solely as an agent on behalf of Maolong in acquiring the power generator. The malfunction of the power generator was not due to any fault or negligence on the part of defendants. Rather, it was a defect attributable to the manufacturer of the power generator. Maolong was informed of this. There was testimony as to efforts by defendants to

-6-

assist Maolong in making the claim against the manufacturer. This was not followed through by Maolong. Therefore, defendants are clear of any liability for the $80,000 or any interest on said amount.

The issue of samples and courier costs of $123,702.95 involves the question of whether or not a course of conduct was entered into by AD to pay for said items. If so, the value of the samples and the courier costs were to be assumed by the defendants. The parties never established a policy as to samples and courier charges. It appears it was done on an "ad hoc" basis with payments for those items being made at some times, and not being made in others. This is particularly so in the latter stages of the relationship that basically terminated in March 2005. It was for the benefit of both parties that the samples were sent. The courier charges are a necessary adjunct. Plaintiff Maolong assumed the risk that those samples and the courier charges would have to be borne by Maolong if there was no prior agreement before such items were shipped. The samples were issued to solicit new business regarding those samples. The arbitrator concludes that Maolong is not entitled to recover the asserted $123,702.95 for the samples and courier charges. Consequently no interest on those charges would be payable.

The remaining item then becomes the admitted $1,332,801.28 obligation and the asserted charge backs as itemized in defendants reply brief to Maolong's opening arbitration brief, and close-out sales losses.

There is no question that defective products need not be paid for by AD. Seasonable notice to Maolong is required, however. The question that has to be asked is was there seasonable notice to Maolong. In the losses incurred by AD in its charge-backs, there are certain items that should be credited against the outstanding $1,332,801.28. While the losses on the charge-backs were mostly at the end of the relationship, there was a certain pattern of notice to Maolong that defective products were being sent to AD. The better procedure would have been a continuing, current notification to

1  Maolong of the items which required a charge-back. AD asserts that it did just that, but such notices

2  were purportedly in telephone conversations between the parties. There is no way for the arbitrator

3  to conclude that each and every, or the majority of the telephone calls, were regarding charge backs.

4  The damages on the close outs are even more frustrating to determine in that notices could or should

5  have been given to Maolong. Maolong would have been able to participate in any close out sales. In

6  other words, the decision to make the close out sales and the details of the price, etc., were controlled

7  by AD. Given the opportunity to participate, Maolong may have been able to rescue the goods at a

8  higher amount, dispose of them themselves, etc. They were not given the opportunity.

9

10      The overriding question is why inspection of the products were not made before forwarding

11  to the customers. The evidence presented at the arbitration showed there was no defined company

12  policy of inspecting the goods either on a detailed or random inspection. That inspection might have

13  revealed defective merchandise and could have resulted in the return of the items or a complete

14  removal of any obligation owing by AD to Maolong for the defective goods. Instead, no or slight

15  inspection was made. The goods were sent to the customers of AD, and rejected at times. There are

16  specific items mentioned in the reply brief of defendants which appear reasonable to be charge

17  backs: decorative pillows - $40,000, defective duvets - $3,269.50 damaged items returned by

18  customers - $33,197.21 -- defective pillow top fiber beds - $40,017.00 which totals $116,483.71.

19  Defendants argue that the quality of the product began to slip in 2004 -- 2005. While it is clear that

20  there were defective products during that period, there is no specific evidence that would point to the

21  increase in the defective merchandise.

22

23      Specifically, the new product of "Magic Suede", the evidence presented to the arbitrator was

24  not enough to convince the arbitrator of a specific finding as to that item. Instead it is taken into

25  consideration in allowing the above charge backs.

26

27  ///

28

-8-

Notwithstanding the commercial code admonition of notice, it would appear that there is notice sufficient to justify the aforesaid charge backs. There is no question of defects, just a question of who should bear the brunt of the loss. The unmentioned factor acknowledged is that given that there was defective merchandise of substantial amounts, the manufacturer, Maolong Down, has some responsibility regarding those items.

Regarding the losses incurred by close outs of the claimed amount of $594,151.04, the arbitrator is not convinced that the manufacturer should be burdened by an inexact method in determining the losses of the close outs. Furthermore, the labor costs is something which should not be attributed to Maolong. A more efficient and effective inspection of the products might have eliminated this item entirely or a majority of the losses if the goods been rejected at the initial stage.

In summary, the arbitrator has determined that the claimed amount of $1,332,801.28 is to be reduced by the aforesaid items totaling $116,483.71.

The arbitrator finds that the statute of limitations does not apply. The obligation was continuing throughout. These were breaches committed by defendants WX and WD of the agreement of which SC was unaware, i.e., salaries in 2001. This also relates to the corporate activities of issuing stocks only to WX and WD, the payments to themselves of distributions without any distribution to SC. SC was not fully aware of these items until accountings were produced through discovery and at the arbitration hearing.

Maolong and SC claim that the alter ego doctrine should apply as to defendants WX and WD. Based on the totality of the evidence that has been introduced, it is the arbitrator's decision that the alter ego doctrine does apply. WX and WD are individually and jointly liable to Plaintiffs. The activities of WX and WD clearly show a merging of the entity with their individualities. Their conduct with their superior knowledge of the U.S. business practices and corporate activities was such that the corporation assets and legal structure was managed in such a way that the merging of

identities became clear. WX and WD dominated and controlled AD, treated the assets of AD as their own as indicated by the payment of salary to the spouse of WD. She was not employed by AD. AD did not keep and respect the corporate formalities that a corporation is required to maintain. WX and WD did not issue any stocks to SC and did not document for their and his records that he was not entitled to any shares of AD. The June 2000 agreement provided that SC should receive a 34% share of AD. The stock certificate is a written representation of ownership in a corporation. The fact that a stock certificate was not issued or does not exist does not deny the ownership. The failure to either issue the shares to SC or to notify SC that he was not entitled to any shares while issuing shares to themselves, constitutes complete domination and control of the corporation. Such conduct leads to the conclusion that the identities merged. WX and WD are individually and jointly liable with AD to Maolong and SC.

Summary of Damages:

Damages due to SC from AD, WX and WD: The following is a recitation of the monetary damages and percentage of ownership that is due to SC as a consequence of defendants' actions. The arbitrator determines that there is no fraud or punitive damages to be assessed against any of the defendants, although it is a close call. However, SC is entitled to a 34% share of AD, plus monetary damages calculated below.

Upon issuance of this award, the defendants individually and collectively are ordered to immediately provide to SC an up to date balance sheet and income statement. Plaintiffs and Defendants should each select a CPA firm. The two firms selected shall then select a third CPA firm. Neither of the two firms should have a close relationship with the third firm. The costs for the selection and the services provided, i.e., current income statement and balance sheet, shall be borne by AD. It is further ordered that a board of directors meeting be called immediately by the existing two directors and that a third director, i.e., SC or his designatee, be placed upon the board of

-10-

directors of AD. Further, until the time such action is taken, defendants are ordered to abstain from taking any corporate action other than in the ordinary course of business. No assets should be disposed of by AD and no distributions of retained earnings or profits should be made until such time as a board of directors meeting is conducted and appropriate distributions made.

It has been suggested by the parties' counsel that measures be taken to value AD and each parties' interests. The arbitrator feels such action is only necessary if either parties are ordered to sell or buy their or the others' interests. The arbitrator is not prepared to so order. The parties have to work that out among themselves with the help of their extremely competent counsel.

Having concluded that SC is entitled to his 34% interest in AD, the next question is what monetary damages is SC entitled to recover from defendants WX and WD? No evidence was introduced to determine what the fair salaries would have been to WX and WD. In order to determine the above the arbitrator has made that determination to both fairly compensate WX and WD, and to return to SC his rightful share of the profits of AD.

WX and WD began drawing small salaries in 2001, with salaries continuing through 2007. (The arbitrator is not making a decision for 2008. That will be determined in the final accounting to SC.) Thereafter, presumably because of the rising huge profits, the combined salaries began increasing in 2003 to $400,000, escalating to almost $1.5 million in 2006. The salaries then dropped to $800,000 in 2007.

Distributions of $8,640,000 were made to WX and WD over the period.

Based upon what has been presented to the arbitrator, the arbitrator has determined that the annual salaries beginning in 2001 for WX and WD should be $150,000 for each person, increasing 10% annually through 2007. 34% of the balance after deducting the salaries from the distributed amounts is awarded to SC. The amount is calculated as follows:

///

| | | |
|---|---|---|
| Total distributions to WX and WD 2003-7 | $8,640,000 | |
| Salaries paid to WX, WD & WD spouse 2003-7 | 4,041,300 | |
| Reasonable salaries 2003-2007 | (1,831,530) | |
| Net available for distribution to AD ownership | $10,849,770 | |
| SC 34% share - WX and WD to pay to SC | 53,688,921 | |

No interest is awarded as the principal amounts changed annually. The arbitrator has arbitrarily selected annual salaries, which in another proceedings may have been challenged. The non-granting of interest is an offsetting factor.

<u>Damages to Maolong from AD, WX and WD, jointly and severally:</u>

The monetary damages award to Maolong are as follows:

Unpaid invoices due to Maolong from AO: $1,332,801.28

Offsets and charge backs of AD against unpaid invoices:   <116,483.71>

10% pre-judgment interest beginning June 2005:   $444,375

Net damages payable to Maolong:   $1,660,692.

Dated: December 22, 2008

Albert C. Lum

Ancillary

On November 9, 2008 the arbitrator issued a ruling to the parties without filing the ruling with the Court. After receipt of the informal ruling, the parties sent to the arbitrator their objections to the determinations set forth in the ruling. The objections were extensive, detailed and thoroughly and competently presented in the arbitrator's opinion. At the same time, it necessitated additional time for the arbitrator to evaluate the objections and to render this final ruling.

-12-

Starting with the informal ruling, and integrating the various objections and corrections made to that ruling, requires a Solomonesque presentation and decision. This arbitrator is not Solomon. However, a decision has to be rendered. The above ruling is consistent with the November 9, 2008 informal ruling except it includes changes that have been made as a result of the comments and objections of the parties. As an ancillary to this ruling, the arbitrator now addresses the changes and gives the arbitrator's reasoning for the changes that have been made.

1. Salaries 2003 – 2007:

The arbitrator took into consideration the fact that AD had considerable profits in the above years. Reasonable business practice would have resulted in the awarding of compensation based upon the profitability and productivity of the enterprise. At the same time, extensive evidence was presented by defendants that 2008 resulted in losses due to the economic downturn. The downturn included substantial firms such as Linen and Things defaulting on their accounts. The same reasoning that applies for allowing a substantial increase in the salaries in the highly profitable years (which was not covered in the original agreement) applies to the fact that AD was beginning to show a loss in 2008. That would result in a substantial reduction in annual salaries for the Chief Executives responsible for managing AD. The compensation for 2008 was therefore not taken into consideration in the award. By the same token, the salaries for 2001 and 2002 were by comparison de minimus and those amounts were not taken into consideration either. The salaries of Defendants that the arbitrator considers a reasonable reduction from the total distributions is $1,831,530. The net available to AD ownership would therefore be $10,849,770, a reduction from the previously stated $11,181,300. SC's 34% share of the distributions is therefore reduced to $3,688,921.

B 2: Damages to Maolong from AD, WX and WD, jointly and separately.

1. Notwithstanding the "admissions by the CPA" as to the $80,000 debt, the evidence shows that the loss was not due in any manner to acts on the part of the defendants. As stated in the primary

-13-

ruling, the defendants notified plaintiff Maolong of the problem and offered to assist to recover the $80,000 from the manufacturer. No action was taken by Maolong, and they essentially sat on their rights. Defendants should not be blamed.

2. With regard to the charge backs of $116,483.71, the assertion by Plaintiff Maolong that none of the goods reflected in those charge backs were mentioned prior to the initiation of this litigation, nevertheless, Maolong was aware that products were being rejected as unfit for sale, and were being returned to AD. In the arbitrator's opinion, sufficient evidence was introduced to show that the products were in fact defective. The conclusion is that the amount of the charge backs to be credited to AD is a fair conclusion since there were losses incurred by AD as a result of the defective products. There was evidence indicating that these "charge backs" were losses incurred by AD. The products were not sold at a lesser amount or retained for the benefit of AD. In this context, the arbitrator has made that determination that there was "seasonable" notice based on a prior pattern of rejection of defective goods.

3. The arbitrator determined that there would be no interest payable on the distributions due to SC. While the argument can be made that the funds were wrongfully retained by the defendants and used by them, and not available for use by SC, at the same time, there is never within the history of this transaction, a clear cut, concise, statement by SC that his share of the profits and distributions were not being paid to him. Although there are reputed demands for accountings, and possibly insufficient and inadequate financial information provided to him, SC did not act as a reasonable person would act in making a formal written demand for information and his share, if any, of the profits and distributions. Although he is entitled to his 34% share of the profits and distributions, his failure to act as a reasonable person would, is a negative factor in awarding him interest on those profits and distributions.

4. The issue of fraud is as the arbitrator stated, a close call. Some credence has to be give to

-14-

the defendants' assertions that they informed SC that he was no longer an owner of AD. However, that credence is not enough to counter the substantial contribution and performance by SC with regard to his support and participation in AD. This is particularly true with the credit terms and providing of goods from Plaintiff Maolong Down, of which SC was an active member of Maolong Down's management. As has been stated previously, in the main text of this ruling, both parties at various important junctures in their business relationship, failed to "close the deal". In other words Defendants' failure to articulate in writing or have other evidence supporting their position, other than self-serving acts such as issuing stock certificates to themselves and filing a sub chapter S corporation, severely undercuts their position. At the same time SC by not asserting his rights at several junctures effectively allowed defendants to treat AD as their private plaything. As a consequence, neither party has clean hands, and the arbitrator is making a decision considering all the factors including the tax factors which will be discussed below.

C. Tax factors

The tax issue presents the most difficult issue for the defendants. It also possibly could impose a substantial tax on SC which he may or may not be able to satisfy if recovery is made from defendants. Defendants' counsel has submitted more than one analysis of how the arbitrator's decision has a severe impact upon Defendants WX and WD. Income tax was paid according to the profits, and not the distributions; with the payment to SC of his 34% share, the income that was reported by WX and WD will be that much less, although taxes have been paid upon SC 34% share.

The Plaintiffs describe the tax situation as a "tax nightmare" for the defendants. It may also become a nightmare for SC should he be charged with the income and required to pay a tax on the income even though he may not have the funds available. Notwithstanding the tax quagmire that has been created, the bottom line conclusion is that Defendants by virtue of their own actions, have created this nightmare of a problem. While it is not the arbitrator's place to advise a remedy, it is

clear that the Defendants will need substantial expert advice as to the re-filing of tax returns for AD (which is disqualified as a S-Corporation because of SC's non U.S. or U.S. permanent resident status). No matter what amount is awarded by this arbitrator, i.e., a higher amount requested by Plaintiffs or a lower amount requested by Defendants, the result is there will be a substantial amount awarded and consequently tax issues that will have to be resolved. Once this arbitration ruling is confirmed by the Court, the ruling can then become a source for an extensive tax audit of all parties involved. The arbitrator finds that SC is not required to contribute $150,000 or any other sum for the taxes of Defendants.

The arbitrator believes that the major issues that have been brought up by Plaintiffs and Defendants either during the hearing or in the aftermath of the informal ruling have been addressed. The reason for not addressing any other issues is because nothing that has been argued by Plaintiffs or Defendants has been substantial enough to change the arbitrator's decision that has been made.

Since the arbitrator is not an advocate for either party but is to determine a fair judgment for both parties, the arbitrator suggests a settlement conference between the parties might be helpful before confirmation of the award is completed. This is only a suggestion of the arbitrator but because of the arbitrator's civil and tax background the arbitrator believes it could be a way to resolve issues, especially tax issues.

Having stated the above, if the arbitrator does not receive a joint communication from the parties that a settlement has been reached, eliminating the necessity of filing this ruling for confirmation from the court, the ruling will be filed on January 5, 2009.

Dated: December 22, 2008

Albert C. Lum – Arbitrator

-16-

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Shaoxing City Maolong Wuzhong Down Products Co. Ltd. and Shui Yan Cheng | DEFENDANTS<br>Wei Xu and Le Du |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Keehn & Associates, APC, 402 W. Broadway, Suite 1210, San Diego, CA 92101<br>Tel: (619) 400-2200 | ATTORNEYS (If Known)<br>Christine M. Fitzgerald and Scott C. Clarkson, 3424 Carson Street, Suite 350, Torrance, CA 90503<br>Tel: (310) 542-0111 |
|---|---|

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☑ Creditor
- ☐ Other
- ☐ Trustee

**PARTY** (Check One Box Only)
- ☑ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor
- ☐ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Determination of Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(4) and 11 U.S.C. 523(a)(6)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 8,502,040.33 |

**Other Relief Sought**

Plaintiffs seek a determination from the Court that the Judgments entered in their favor and against Mr. Dong are not dischargeable pursuant to 11 U.S.C. 523(a)(4) and 11 U.S.C. 523(a)(6), as well as their costs and any other relief to which the Court deems them entitled.

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
|---|---|---|
| Wei Xu and Le Du | | 2:09-bk-24637-RN |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Central | Los Angeles | Hon. Richard M. Neiter |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF Shaoxing City Maolong Wuzhong Down Products Co. Ltd. and Shui Yan Cheng | DEFENDANT Wei Dong and Yingzi Yan | ADVERSARY PROCEEDING NO. 2:09-ap-02179-SB |
|---|---|---|

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Central | Los Angeles | Hon. Samuel L. Bufford |

**SIGNATURE OF ATTORNEY (OR PLAINTIFF)**

*L. Scott Keehn*

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| 9/18/09 | L. Scott Keehn |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| *Attorney for Plaintiff* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re: | CHAPTER _____ |
|---|---|
| | CASE NUMBER |
| Debtor. | ADVERSARY NUMBER |
| Plaintiff(s), | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)* |
| vs. | **SUMMONS AND NOTICE OF STATUS CONFERENCE** |
| Defendant(s). | |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint.  You must also send a copy of your written response to the party shown in the upper left-hand corner of this page.  Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| **Hearing Date:** | **Time:** | **Courtroom:** | **Floor:** |
|---|---|---|---|

❑  **255 East Temple Street, Los Angeles**          ❑  **411 West Fourth Street, Santa Ana**

❑  **21041 Burbank Boulevard, Woodland Hills**      ❑  **1415 State Street, Santa Barbara**

❑  **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference.  Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval.  The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
*Deputy Clerk*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*                                                          **F 7004-1**

| In re | (SHORT TITLE) | CASE NO.: |
|---|---|---|
| | Debtor(s). | |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described as _____ _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.   On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re                    (SHORT TITLE) | CASE NO.: |
|---|---|
| Debtor(s). | |

**ADDITIONAL SERVICE INFORMATION** (if needed):

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*                                                    **F 7004-1**